IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TOMIKA WATKINS<br>1735 Evansdale Avenue<br>Toledo, Ohio 43607 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| THE UNIVERSITY OF TOLEDO<br>FOUNDATION<br>1735 W. Rocket Drive<br>Toledo, Ohio 43606 | )<br>)<br>)<br>)<br>) | **(Jury Demand Endorsed Herein)** |
| **Serve Also**:<br>THE UNIVERSITY OF TOLEDO<br>FOUNDATION<br>c/o Timothy C. McCarthy<br>Statutory Agent<br>1000 Jackson Street<br>Toledo, Ohio 43604 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Tomika Watkins, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Watkins is a resident of the city of Toledo, county of Lucas, state of Ohio.

2. The University of Toledo Foundation ("UT") is not for profit public university in the city of Toledo, county of Lucas, state of Ohio.

**JURISDICTION & VENUE**

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Watkins is alleging Federal Law Claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq*.

4. All material events alleged in this Complaint occurred in county of Lucas.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

6. Within 300 days of the conduct alleged below, Watkins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 471-2019-01910.

7. On or about July 31, 2019 the EEOC issued and mailed a Notice of Right to Sue letter to Watkins regarding the Charges of Discrimination brought by Watkins.

8. Watkins received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1)—which has been attached hereto as Plaintiff's Exhibit A.

9. Watkins has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

10. Watkins has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

11. Watkins is a former employee of UT.

12. Watkins is African American.

13. Watkins is female.

14. In or around August 2018, UT hired Watkins as a Certified Pharmacy Technician.

15. Watkins had been the only female African American employee in her department at UT.

16. During Watkins' employment at UT, she constantly experienced harassment.

17. In Watkins' first week of work, Patricia Connor constantly talked to Watkins condescendingly.

18. Connor is a Pharmacy Technician at UT.

19. Connor is Caucasian.

20. Conner did not speak to non-African American employees of UT condescendingly.

21. Conner spoke to Watkins condescendingly because of Watkins' race.

22. Connor spoke to Watkins condescendingly because Watkins is African American.

23. In Watkins' first week of work, Connor ignored Watkins anytime Watkins needed help with work.

24. Connor did not ignore non-African American employees of UT.

25. Connor ignored Watkins because of Watkins' race.

26. Connor ignored Watkins because Watkins is African American.

27. In or around September 2018, Watkins complained to Valeria Householder about Connor's harassment.("Watkins' First Complaint").

28. Householder is a Pharmacist at UT.

29. Householder is Caucasian.

30. Upon information and belief, Householder had authority to issue discipline to pharmacy technicians.

31. Upon information and belief, Householder has and/or had authority to hire and/or terminate the employment of pharmacy technicians.

32. During all material events asserted herein, Household is and/or was a management-level employee for UT.

33. Householder failed to discipline Connor regarding Watkins' complaint about her discrimination and harassment.

34. In Householder's failure to discipline Connor regarding Watkins' complaint about her discrimination and harassment, UT ratified and/or condoned the same.

35. Upon information and belief, UT has an Equal Employment policy of which employees are required to follow.

36. Upon information and belief, Householder, upon receiving a complaint of race discrimination, was required to either report this to a supervisor or to human resources.

37. Upon information and belief, Householder was required to conduct an investigation into Watkins' complaint of discrimination and harassment.

38. In Householder failing to properly report Watkins' complaint of discrimination and harassment, UT ratified and/or condoned Connor's discrimination and harassment of Watkins.

39. In Householder failing to conduct an investigation into Watkins' complaint of discrimination and harassment, UT ratified and/or condoned the same.

40. Householder told Watkins to ignore Connor's discriminatory behavior, and that there was nothing Householder could do because Connor was a "good worker."

41. Following Watkins' First Complaint, Connor's harassment toward Watkins worsened.

42. On or about October 30, 2018, Connor grabbed a script Watkins created from the printer and refused to give it to Watkins. ("Script Incident").

43. During the Script Incident, Connor knew that she was supposed to give the script to Watkins.

44. During the Script Incident, Connor placed the script in the basket used for holding prescription orders, when she knew it was supposed to be handed to Watkins.

45. During the Script Incident, Watkins reprinted her script and Connor again placed the script in the basket rather than giving it to Watkins.

46. Conner would hand scripts to Caucasian employees.

47. Conner would not hand Watkins her script because of Watkins' race.

48. On or about October 30, 2018, following the Script Incident, Watkins sent an email to Householder asking to meet with Conner and Human Resources regarding this matter. ("Watkins' Second Complaint").

49. Householder did not respond to Watkins' Second Complaint.

50. Householder did not arrange a meeting to address the harassment Watkins experienced.

51. Householder did not arrange a meeting to address the discrimination Watkins experienced.

52. Householder did not arrange a meeting to address the harassment and discrimination Watkins experienced in retaliation of Watkins' complaint.

53. Householder failed to report Watkins' Second Complaint.

54. In Householder failing to report Watkins' Second Complaint, UT condoned the discrimination against and harassment of Watkins.

55. As Householder did not conduct an investigation regarding Watkins' Second Complaint, UT condoned and/or ratified the discrimination and harassment of Watkins.

56. Almost immediately after Watkins' Second Complaint, Householder informed Watkins that "it's a good time for a performance review."

57. Watkins had not received a performance review until after she filed her complaints for the harassment and discrimination, she experienced at UT.

58. Householder issued Watkins a performance review in retaliation of Watkins' complaints of harassment and race discrimination.

59. Householder told Watkins that the harassment and race discrimination Watkins complained about was Watkins' fault and that Watkins just had a bad attitude.

60. Householder did not accuse non-African American employees of having an attitude.

61. Householder accused Watkins of having an attitude because of Watkins' race.

62. Householder accused Watkins of having an attitude because Watkins is African American.

63. Householder told Watkins that during the Script Incident, Watkins should have been more assertive and not acted like a child.

64. Householder did not accuse non-African American employees of acting like children.

65. Householder accused Watkins of acting like a child because of Watkins' race.

66. Householder accused Watkins of acting like a child because Watkins is African American.

67. Instead of taking corrective action toward Connor for her discriminatory behavior, Householder blamed Watkins for Connor's harassment and discrimination.

68. Householder told Watkins to cut off her acrylic nails.

69. Householder did not instruct non-African American employees to cut off their acrylic nails.

70. Householder instructed Watkins to cut off her acrylic nails because of her race.

71. Householder instructed Watkins to cut off her acrylic nails because Watkins is African American.

72. As a management-level employee, when Householder harassed Watkins on the basis of her race due to her acrylic nails, UT engaged in race discrimination.

73. Householder told Watkins that she needed to dress more professionally and that she had to wear scrubs rather than professional clothing.

74. The UT dress code policy states that Pharmacy Technicians can wear professional clothing or scrubs.

75. When Watkins informed Householder of the dress code policy, Householder responded stating, "Well, I have big boobs, but I have to wear shirts that cover them." ("Householder's Big Boobs Statement").

76. Householder's Big Boobs Statement insinuated that Watkins needed to wear scrubs because of the size of her breasts.

77. Householder's Big Boobs Statement offended Watkins.

78. Householder's Big Boobs Statement had not been welcomed by Watkins.

79. Householder's Big Boobs Statement made Watkins uncomfortable.

80. Watkins did not give Householder permission to discuss her breast size.

81. Watkins did not give Householder permission to discuss her physical appearance.

82. Householder did not make statements about the breast size of non-female employees.

83. Householder did not make statements about the physical appearance of non-female employees.

84. Householder did not require male employees to wear scrubs rather than dress close, per the dress code policy.

85. Householder instructed Watkins to wear scrubs due to her feminine physicality and features.

86. Householder's Big Boobs Statement was made because of Watkins' gender.

87. On or about November 26, 2018, Defendant terminated Watkins.

88. Householder made and/or participated in the decision to terminate Watkins' employment.

89. Defendant's asserted reason for terminating Watkins' employment was "unsatisfactory work performance."

90. Defendant's reason for terminating Watkins' employment was pretext for discrimination.

91. Defendant terminated Watkins' employment because of her race.

92. Defendant terminated Watkins' employment in retaliation for making complaints of harassment.

93. Defendant terminated Watkins' employment in retaliation for making complaints of discrimination.

94. Upon information and belief, following terminating Watkins' employment, Defendant replaced Watkins with an individual outside of Watkins' protected class.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2 *et seq.*

95. Watkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

96. At all times relevant during her employment, Watkins, as an African-American, was a member of a statutorily-protected class under 42 U.S.C. § 2000e-2 *et seq.*

97. UT treated Watkins differently from other similarly situated employees based on her race.

98. Defendant was aware that Watkins suffered race discrimination and/or harassment.

99. Defendant failed to take any action to stop or correct the race discrimination and/or harassment that Watkins suffered.

100. Defendant ratified and/or condoned the race discrimination and/or harassment of Watkins.

101. UT discriminatorily enforced its dress code policy as to Watkins due to her race.

102. UT terminated Watkins based on her race.

103. UT violated 42 U.S.C. § 2000e-2 *et seq.* by discriminating against and terminating Watkins based on her race.

104. As a direct and proximate cause of UT's conduct, Watkins suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: GENDER DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2 *et seq.*

105. Watkins restates each and every paragraph of this Complaint as though it were fully restated herein.

106. Watkins is a member of a statutorily protected class based upon her gender and sex under 42 U.S.C. § 2000e-2 *et seq.*

107. UT treated Watkins differently than other similarly-situated employees based on her gender.

108. Throughout her employment, Watkins was fully competent to perform her essential job duties.

109. During Watkins' employment, she was subjected to harassment on the basis of her gender.

110. UT violated 42 U.S.C. § 2000e-2 *et seq*. by forcing Watkins to work in an environment where sexualized comments were directed toward employees on the basis of their gender.

111. UT violated 42 U.S.C. § 2000e-2 *et seq*. by forcing Watkins to work in an environment where discriminatory comments based on gender were directed toward her.

112. UT violated 42 U.S.C. § 2000e-2 *et seq*.by permitting Householder to harass Watkins because of Watkins' gender and sex.

113. UT violated 42 U.S.C. § 2000e-2 *et seq*. by condoning the harassing statements made by Householder.

114. UT violated 42 U.S.C. § 2000e-2 *et seq*.by applying employment policies in a disparate manner based on an employee's gender and/or sex.

115. UT violated 42 U.S.C. § 2000e-2 *et seq*. by applying disciplinary policies in a disparate manner based on an employee's gender and/or sex.

116. UT's actions amount to discrimination on the basis of gender and sex in violation of 42 U.S.C. § 2000e-2 *et seq*.

117. On or about November 26, 2018, UT terminated Watkins without just cause.

118. UT terminated Watkins due to her gender.

119. UT's discrimination against Plaintiff based on her gender and sex violates 42 U.S.C. § 2000e-2 *et seq*.

120. As a direct and proximate cause of UT's conduct, Watkins is entitled to all damages provided for in 42 U.S.C. § 2000e-2 *et seq*., including compensatory damages, punitive damages, emotional distress damages, and costs and/or reasonable attorney's fees.

**COUNT III: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-2 *et seq.***

121. Watkins restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

122. Pursuant to 42 U.S.C. § 2000e-2 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

123. As a result of UT's harassing and discriminatory conduct described above, Watkins complained about experiencing harassment on the basis of race.

124. Subsequent to Watkins reporting unlawful harassment, UT failed to take any meaningful action to stop the harassment she faced.

125. Subsequent to Watkins reporting unlawful harassment, UT condoned and/or ratified the harassment she suffered.

126. Subsequent to Watkins reporting unlawful harassment, the harassment of Watkins intensified.

127. Subsequent to Watkins reporting unlawful harassment, Watkins was terminated.

128. UT terminated Watkins's employment in retaliation for her making protected complaints.

129. UT's actions were retaliatory in nature based on Watkins' opposition to the unlawful discriminatory conduct.

130. UT violated 42 U.S.C. § 2000e-2 *et seq.* by disciplining Watkins in ratifying the harassment of Watkins.

131. UT violated 42 U.S.C. § 2000e-2 *et seq.* by terminating Watkins.

132. As a direct and proximate result of UT's retaliation against Watkins, she suffered and will continue to suffer damages, including economic, and emotional distress damages.

**DEMAND FOR RELIEF**

WHEREFORE, Watkins demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Watkins to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Watkins for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Watkins' claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/*Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
            daniel.dubow@spitzlawfirm.com

*Attorneys for Plaintiff Tomika Watkins*

## **JURY DEMAND**

Plaintiff Tomika Watkins demands a trial by jury by the maximum number of jurors permitted.

/s/*Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**